09-3099-ag
De La Rosa v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

December Term, 2009

(Argued: December 21, 2009

Decided: February 25, 2010
Amended: February 25, 2010)

Docket No. 09-3099-ag

Marino De La Rosa,

*Petitioner*,

− v. −

Eric H. Holder, Jr., Attorney General,

*Respondent*.

Before: CALABRESI, and POOLER *Circuit Judges*,
and KAHN, *District Judge*.[*]

Petition for review of decisions by the Board of Immigration Appeals ("BIA") reversing an immigration judge's ("IJ") grant of deferral of removal and affirming a subsequnt order of removal against petitioner pursuant to the Convention Against Torture ("CAT"). The BIA's order is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion.

Alexander Arandia, Arandia & Arandia, Forest Hills N.Y.,
*for Petitioner*.

---

[*]The Honorable Lawrence E. Kahn, United States District Court Judge for the Northern District of New York, sitting by designation.

Tony West, Assistant Attorney General, Civil Division, John S. Hogan, Senior Litigation Counsel, Aimee J Frederickson, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., *for Respondent*.

---

Kahn, *District Judge*:

Petitioner Marino De La Rosa, a native of the Dominican Republic, appeals from the June 22, 2009, final decision and order of the Board of Immigration Appeals ("BIA") affirming the October 8, 2008, decision of Immigration Judge ("IJ") Helen Sichel denying De La Rosa's application for deferral of removal under the Convention Against Torture ("CAT"), and ordering his removal from the United States to the Dominican Republic. See United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85.

The IJ issued that October 8, 2008, order of removal following a May 22, 2008, decision by the BIA reversing and vacating the IJ's June 22, 2006, decision granting deferral of removal, and remanding De La Rosa's record to the IJ for the sole purpose of ordering removal. On appeal, De La Rosa argues that he has shown a sufficient likelihood that he would be subject to torture upon removal to the Dominican Republic, and that the BIA erred in reversing the June 22, 2006, decision of the IJ.

We find the BIA committed error in its review of the IJ's factual findings and of the evidentiary record in De La Rosa. The BIA may not engage in fact-finding during an appeal from the decision of IJ, and may only review the IJ's factual findings for clear error. 8 C.F.R. §

2

1003.1(d)(3(I). The BIA employed an improper standard of review by considering the evidentiary record in De La Rosa's case and by finding facts inconsistent with the findings of the IJ. On this basis, the BIA concluded that the "weight of the evidence" did not show that it is more likely than not De La Rosa would be tortured upon removal. Additionally, the BIA may have rested its decision on an alternative ground, concluding that the IJ's factual findings and De La Rosa's submissions, as a matter of law, necessarily precluded a finding of government acquiescence to torture. Due to our concerns with the BIA's treatment of the "government acquiescence" standard for torture under the CAT, we remand to the BIA for precedential consideration of this issue.

Therefore, we vacate the BIA's June 22, 2009 and May 22, 2008, decisions, and we remand De La Rosa's record to the BIA for further proceedings consistent with the Court's opinion. Given the amount of time this panel has spent with this case, we shall retain jurisdiction over any post-remand appeal that may be made.

I.      BACKGROUND

De La Rosa, born in the Dominican Republic in 1964, entered the United States in 1982 to play professional baseball. Based on the sponsorship of his then-wife, a United States citizen, he was admitted to the United States on November 12, 1989 as a lawful permanent resident. Removal proceedings were initiated against De La Rosa in December of 2001 after he pled guilty in to the crime of conspiracy to distribute and possess, with intent to distribute, cocaine and heroin, in violation of Sections 846, 846(a)(1), 841(a)(1), and 841(b)(1)(A) of Title 21 of the United States Code. He was charged with removability pursuant to Sections 237(a)(2)(A)(iii)

3

and 237(a)(2)(B)(I) of the Immigration and Nationality Act due to his status as an alien convicted of an aggravated felony and as an alien who, after admission, was convicted of a violation involving a controlled substance. De La Rosa was found ineligible for asylum and withholding of removal on February 4, 2003, because of his conviction for a serious crime.

Over the next several years, he sought relief under Article 3 of the CAT and gave testimony in support of that application to the IJ, ultimately resulting in the June 22, 2006, decision and order granting him deferral of removal pursuant to 8 C.F.R. §§ 1208.16(c)(4) and 1208.17(a). The BIA reversed and remanded the IJ's decision with the instruction to issue an order of removal. Following the IJ's compliance with that instruction, the BIA dismissed De La Rosa's appeal, and De LaRosa filed the petition for review now before this Court. That appeal was expedited, and the Court has granted a temporary stay of removal pending its disposition.

De La Rosa's claim for relief under Article 3 of the CAT revolve around his cooperation with federal prosecutors following his arrest for involvement in a drug trafficking conspiracy. By assisting the government, De La Rosa obtained a significant downward departure in his own sentencing and facilitated the conviction of other individuals, including a Dominican national named Jonas Brito ("Brito"). De La Rosa contends that he will more likely than not be tortured or killed upon removal to the Dominican Republic due to a number of facts, including: the express, repeated desire of Brito and others to kill him; the presence of Brito's family and contacts currently in the Dominican Republic, including a brother in the government; the corruption and ineffectiveness of the Dominican authorities; and the pattern of Dominican government involvement in unlawful killings.

To establish entitlement to relief under the CAT, De La Rosa bears the burden of proving

4

that it is more likely than not that removal will cause him to be subject to torture. Torture is defined as the infliction of severe pain or suffering by, at the instigation of, or with the consent or acquiescence of a public official. See C.F.R. §§ 1208.16, 1208.17, 1208.18, § 1208.18(a)(1). In the June 22, 2006, decision granting De La Rosa deferral of removal, the IJ determined that De La Rosa met that burden, having "demonstrated that it is more likely than not that the Dominican police will show willful blindness to, or even actively participate in, torturing and/or killing [him]. Both the May 22, 2008, BIA decision reversing the IJ and the June 22, 2009, BIA decision dismissing De La Rosa's appeal rejected this conclusion, finding that the "weight of the evidence simply does not indicate that it is 'more likely than not' that he will be tortured," and that "the evidence fails to show that the government would acquiesce in acts to torture him."

## II.   DISCUSSION

As an initial matter, the REAL ID[1] Act of 2005 limits our jurisdiction to review final orders of removal against individuals removable for having committed crimes involving a controlled substance to constitutional claims or questions of law. See 8 U.S.C. §§ 1252(a)(2)(C), (D). We have found this section to so limit our jurisdiction in withholding of removal cases. See Pierre v. Gonzales, 502 F.3d 109, 111-13 (2d Cir. 2007). We have also assumed, without discussion, that section 1252(a)(2)(C) is applicable to deferral of removal claims under the CAT. E.g., Poole v. Mukasey, 522 F.3d 259, 262 (2d Cir. 2008). We have not, however, expressly held that the section is applicable to deferral claims. It should be noted that the Ninth Circuit draws a

---

[1]Rearing and Empowering America for Longevity against acts of International Destruction

distinction between withholding and deferral claims, treating the jurisdictional limits imposed by section 1252(a)(2)(C) as inapplicable if the conviction does not provide the basis of the IJ's decision on relief under the CAT. See Lemus-Galvan v. Mukasey, 518 F.3d 1081, 1084, n.3 (9th Cir. 2008) (distinguishing Ruiz-Morales v. Ashcroft, 361 F.3d 1219 (9th Cir. 2004) and stating that "'[w]hen an IJ does not rely on an alien's conviction in denying CAT relief and instead denies relief on the merits, none of the jurisdiction-stripping provisions. . . apply to divest this court of jurisdiction.'" (quoting Morales v. Gonzales, 478 F.3d 972 (9th Cir. 2007))). In the instant case, we need not address this jurisdictional issue because the appeal raises only questions of law.

### a. BIA's Standard of Review of IJ's Factual Findings

Since September 25, 2002, the BIA has been bound to review the factual findings of immigration judges only for clear error. See Xian Tuan Ye v. Dep't of Homeland Sec., 446 F.3d 289 (2d Cir. 2006). "The Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). The BIA did not comply with this regulatory command in reviewing the IJ's factual findings, but rather applied a standard that substantially deviated from clear error and may have been *de novo*. Whatever the precise level of review undertaken by the BIA with respect to the IJ's factual findings in De La Rosa's case, it constituted error.

In its May 22, 2008, decision reversing the IJ's determination of De La Rosa's CAT

6

claim, the BIA articulated its standard of review as that of determining "the weight of the evidence." In exercising this review, the BIA appears to have made its own factual findings based on "all evidence." In doing so, the BIA's characterization of facts deriving from the evidentiary record is demonstratively at odds with factual findings made by the IJ, including several directly inconsistent findings. For example, the BIA deviated from the IJ's factual findings when it determined that De La Rosa failed to establish that Brito's family would be able to identify De La Rosa or that such persons would even seek him out in the Dominican Republic. **Id.** Other than concluding that the IJ "erroneously granted the respondent's application for deferral," the BIA did not indicate or explain how the IJ may have committed clear error.

The standard of review entailed by "weight of the evidence" cannot be squared with review for clear error in this Circuit. See Ceraseo v. Motiva Enterp., LLC, 326 F.3d 303, 316-17 (2d Cir. 2003) (distinguishing clearly erroneous findings, which is a ground for reversal, from "weight of the evidence," which cannot be such a ground). Indeed, "weight of the evidence" is often equated across circuits with a de novo inquiry into the preponderance of the evidence. See, e.g., Nutraceutical Corp. v. Von Eschenbach, 459 F.3d 1033, 1040 (10th Cir. 2006) ("The preponderance of the evidence standard requires the party with the burden of proof to support its position with the greater weight of the evidence."); Jazz Photo Power Corp. v. United States, 439 F.3d 1344, 1350 (Fed. Cir. 2006) (stating that "we have defined preponderance of the evidence in civil actions to mean 'the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it.'") (citation omitted); United States v. Garcia-Guizar, 160 F.3d 511, 523 n.9 (9th Cir. 1998) ("A preponderance of the evidence means the greater weight of the evidence."); Lowry v. Alabama Power Co., 483 F.3d 1184, 1209 (11th Cir.

2007) (same).  But see MBH Commodity Advisors, Inc. v. Commodity Futures Trading Comm'n, 250 F.3d 1052, 1060-1061 (7th Cir. 2001) (distinguishing "weight of the evidence" review from a "de novo" review involving new factual findings and the possibility of new evidence in the context of the Commodities Exchange Act, 7 U.S.C. § 21).  While the Court does not review the factual findings of the IJ and the BIA, it is apparent that, as a matter of law, the BIA's "weight of the evidence" review of the IJ's findings does not conform to the dictates of 8 C.F.R. § 1003.1(d)(3)(i).

The improper standard of review used by the BIA is the type of error that requires remand.  We have said that "[i]t is precisely because factfinding in both the asylum and withholding contexts is expressly committed to the discretion of the Executive Office of Immigration Review ("EOIR") that, when those findings rely upon legal errors, the appropriate remedy is generally to vacate those finding and remand to the BIA for reconsideration of an applicant's claim."  La Hua Lin v. United States Dep't of Justice, 453 F.3d 99, 106 (2d Cir. 2006).  Minor errors, however, do not require remand.  See Cao He Lin v. United States Dep't of Justice, 428 F.3d 391, 401 (2d Cir. 2005).  Remand is unnecessary if it would be pointless or futile, such as where there is an alternative and sufficient basis for the result, the error is tangential to non-erroneous reasoning, or the overwhelming evidence makes the same decision inevitable.  See also Xiao Ji Chen v. United States Dep't of Justice, 434 F.3d 144, 161 (2d Cir. 2006).  The general rule is that the Court must be "confident that the agency would reach the same result upon a reconsideration cleansed of errors."  La Hua Lin, 453 F.3d at 107.

Absent an alternative and sufficient ground for the BIA's decision, the error in the standard of review requires remand.  In view of the IJ's factual findings which may support a

8

decision in De La Rosa's favor, as well as the new evidence submitted by De La Rosa to the BIA on appeal,[2] the Court finds that the BIA, applying the proper standard of review for clear error, could conclude that it is more likely than not that De La Rosa would be tortured upon removal to the Dominican Republic within the meaning of the CAT.

However, our review of the BIA decisions reveals that the BIA may have an alternative basis for its reversal of the June 22, 2006, IJ decision and dismissal of De La Rosa's appeal. Accordingly, we must proceed to review this possible alternative ground, which if sufficient to support the BIA's decision, would insulate the BIA's error. Cao He Lin, 428 F.3d at 401.

### b.        Government Acquiescence

The BIA may have denied De La Rosa's CAT application for an alternative reason. The BIA's opinion implies that, as a matter of law, the evidence in the case precluded a finding of government acquiescence. The BIA explained: "evidence he provides on appeal includes several police investigations and arrests related to his complaints. . . . Therefore, the evidence fails to show that the government would acquiesce in acts to torture him, or that it would be unable or unwilling to fulfill its duty to protect him." This implies that the existence of some government actors attempting to prevent torture is sufficient to negate the fact that other government actors would be complicit in that torture, even when evidence strongly indicates that the government as

---

[2]The BIA received and considered new evidence submitted by De La Rosa on appeal, finding that it actually undermined his claim. This procedure was inconsistent with 8 C.F.R. § 1003.1(d)(3)(iv), which states that "[e]xcept for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals." The proper course for the BIA would have been to either reject the evidence without consideration or move, *sua sponte*, to reopen the case before the IJ with the additional evidence.

a whole would be unable to prevent the torture from occurring. Such an understanding of government acquiescence would, of course, provide an alternative ground for denying De La Rosa's CAT application. It is not entirely clear, however, to what extent the BIA order fully adopts this view or rests its outcome upon it.

Article 3 of the CAT prohibits the deportation of any person to a country where it is more likely than not that "[the individual] would be in danger of being subjected to torture." Article 3, 1465 U.N.T.S. 85 (CAT).[3] For pain and suffering to be cognizable as torture under the CAT, as set forth in Article 1 of the Convention, it must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Article 1, 1465 U.N.T.S. 85 (CAT). The CAT's implementing regulations clarify, and the Senate voted for ratification with the understanding that, "[a]cquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18; 136 Cong. Rec. 36, 198 (1990). Thus we have held that "torture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." Khouzam v. Ashcroft, 361 F.3d 161, 171 (2d Cir. 2004). Given this background, we are concerned with the BIA's legal conclusion that the evidence submitted by De La Rosa precludes the possibility of government acquiescence to his torture.

The IJ made a series of factual findings bearing on the actual involvement of Dominican government actors in the possible killing of De La Rosa. These include findings that Brito has

---

[3]Article 3 of CAT uses the language "substantial ground for believing that" rather than "more likely than not that." The Senate ratified the CAT with the understanding that the latter standard would operate in place of the former. See 136 Cong. Rec. 36, 198 (1990).

contacts in the Dominican government, that Brito's brother is an official in that government, and that this brother had met De La Rosa and is able to recognize him. The IJ also found that Brito told a co-defendant of De La Rosa that he has brothers in the Dominican army. **Id.** Additionally, the IJ received the most recent United States State Department Report on the Dominican Republic, taking notice that it documented widespread corruption within the government and police force, including infiltration by criminals and involvement in drug trafficking. Finally, De La Rosa submitted evidence to the BIA indicating that Brito is present in the Dominican Republic with the intent to kill De La Rosa and that the Dominican government lacks the resources to prevent De La Rosa's murder upon his removal to the country.

Despite this array of factual findings and submissions on appeal, the BIA concluded that the evidence fails to show that the Dominican government would acquiesce in the torture of De La Rosa, apparently on the basis that De La Rosa introduced evidence that some persons within the government had taken steps to prevent his torture. Without discussion, the BIA appears to have assumed that the activity of these actors overrides both the complicity of other government actors and the general corruption and ineffectiveness of the Dominican government in preventing unlawful killings. We have significant doubts about this view of what may constitute government acquiescence.

In short, it is not clear to this Court why the preventative efforts of some government actors should foreclose the possibility of government acquiescence, as a matter of law, under the CAT. Where a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture, the fact that some officials take action to prevent the torture would seem neither inconsistent with a finding of

11

government acquiescence nor necessarily responsive to the question of whether torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Article 1, 1465 U.N.T.S. 85 (CAT); see also 8 C.F.R. § 208.18.

In light of the Court's concern with the BIA's application of the "government acquiescence" legal standard, we find it appropriate to remand the instant case for additional analysis and discussion of that question. The Supreme Court has stated that "[g]enerally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." Immigration and Naturalization Serv. v. Ventura, 537 U.S. 12, 16 (2002). At this juncture, the proper course is for the BIA to make a considered judgment on the application of the government acquiescence standard in the category of circumstances at issue. "The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." Id. at 17; see also Yuanliang Liu v. United States Dep't of Justice, 455 F.3d 106 (2d Cir. 2006) (explaining prudential reasons for remand to the BIA, whether or not administrative law principles require it). Accordingly, we ask that the BIA issue a precedential opinion on whether, as a matter of law, a government may acquiesce to a person's torture where (1) some officials attempt to prevent that torture (2) while other officials are complicit, and (3) the government is admittedly unable to actually prevent the torture from taking place.

III.    CONCLUSION

12

The law is not clear as to whether the BIA's implication or assumption that De La Rosa's evidence precludes a finding of government acquiescence would provide an alternative and sufficient basis on which to uphold the BIA's May 22, 2008 and June 22, 2009 orders. Therefore, the BIA's misapplication of the standard of review with respect to the IJ's factual findings requires that we vacate the BIA's orders denying De La Rosa deferral of removal and dismissing his appeal, and that we remand De La Rosa's record back to the BIA. This panel retains jurisdiction over any post-remand appeal that the parties may make.

13