*Pierre v. Lynch*

BIA
Straus, IJ
A070 626 360

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16ᵗʰ day of February, two thousand sixteen.

PRESENT: PIERRE N. LEVAL,
         REENA RAGGI,
         RAYMOND J. LOHIER, JR.,
              *Circuit Judges.*

_____

GUERLIE PIERRE, AKA CIVERLIE
PIERRE,
         *Petitioner,*

         v.                                    14-236
                                               NAC

LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,*
         *Respondent.*

_____

FOR PETITIONER:     Joel Michael Cohen, Gibson, Dunn & Crutcher
                    LLP, New York, New York.

_____

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Loretta E. Lynch is automatically substituted for former Attorney General Eric H. Holder, Jr. as Respondent.

**FOR RESPONDENT:**     Joyce R. Branda, Acting Assistant Attorney General; Claire L. Workman, Senior Litigation Counsel; Edward C. Durant, Attorney, Office of Immigration Litigation, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Guerlie Pierre, a native and citizen of Haiti, seeks review of a December 27, 2013 decision of the BIA affirming a July 22, 2013 decision of Immigration Judge ("IJ") Michael Straus denying Pierre's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and ordering her removed based on her conviction for importing into the United States five kilograms or more of cocaine. *See In re Guerlie Pierre a.k.a. Civerlie Pierre,* No. A070 626 360 (B.I.A. Dec. 27, 2013), *aff'g* No. A070 626 360 (Immig. Ct. Hartford, CT July 22, 2013); *see also* 8 U.S.C. §§ 1182(a)(2)(A)(i)(II); 1182(a)(2)(C).  On appeal, Pierre challenges only the denial of CAT relief, arguing that the BIA (1) erred in its application of the government acquiescence standard under the CAT, and (2) unambiguously mischaracterized the record in concluding that she could relocate within Haiti.

2

Although our jurisdiction is limited to review of constitutional claims and questions of law, *see Ortiz-Franco v. Holder*, 782 F.3d 81, 86 (2d Cir. 2015), that jurisdiction extends to both issues Pierre here raises, *see De La Rosa v. Holder*, 598 F.3d 103, 107, 110–11 (2d Cir. 2010) (concluding that misapplication of government acquiescence standard under CAT constitutes question of law)*; Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (holding that agency commits error of law when it "totally overlook[s]" and "seriously mischaracterize[s]" facts).

In the circumstances of this case, we review the IJ's opinion as modified by the BIA, *i.e.*, we assume, as the BIA did, that Pierre assisted United States law enforcement in apprehending her co-conspirators whom she claims are seeking to harm her. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Moreover, because neither the IJ nor the BIA discussed Pierre's credibility at any point, we presume the credibility of Pierre's testimony, *see* 8 U.S.C. § 1158(b)(1)(B)(iii), and her testimony alone, if credible, may be sufficient to sustain her burden of proof, *see* 8 C.F.R. § 1208.16(c)(2). We assume the parties' familiarity with the underlying facts and procedural history in this case, which we

3

explain only as necessary to explain our decision to grant the petition.

1.  <u>Government Acquiescence</u>

To establish eligibility for CAT relief, an applicant must demonstrate that (1) "it is more likely than not that he or she would be tortured if removed to the proposed country of removal," 8 C.F.R. § 1208.16(c)(2), *i.e.*, subjected to acts "by which severe pain or suffering is . . . intentionally inflicted" for the purpose of punishment, *Pierre v. Gonzales*, 502 F.3d 109, 114 (2d Cir. 2007) (quoting 8 C.F.R. § 208.18(a)(1)); and (2) government officials would inflict such torture, or otherwise acquiesce in it, *see* 8 C.F.R. § 208.18(a)(1), *i.e.*, "know of or remain willfully blind to" the anticipated acts of torture and "thereafter breach their legal responsibility to prevent it," *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004). We agree with Pierre that the BIA appears to have misapplied the government acquiescence standard and overlooked evidence suggesting that the Haitian government would acquiesce in the drug gang's attempt to kill her.[1]

---

[1] We reject the government's argument that Pierre failed to exhaust this issue before the BIA. *See Lin Zhong v. U.S. Dep't*

4

The evidence shows that within a few days of Pierre's arrest at the Miami airport for importing cocaine into the United States from Haiti, members of the drug conspiracy (1) went to her family's home in Haiti "heavily armed," and physically assaulted everyone inside the home, explaining that "whenever we encounter [Pierre], we will kill her," Certified Administrative Record ("CAR") 291; *see also id.* at 264 (letter corroborating account in police report); and (2) went to Pierre's home in Miami and shot her husband, *see id.* at 292–95. With respect to the incident in Haiti, Pierre testified that one of the individuals "working with" the group is "in the government," *id.* at 142, and that certain of the individuals were in police uniform, *see id.* at 95. The record further shows that individuals followed Pierre's sister home from school,

_____

*of Justice*, 480 F.3d 104, 122 (2d Cir. 2007) ("Usually, the requirement of [8 U.S.C.] § 1252(d)(1) that federal courts review only 'final orders of removal' has the effect of imposing a bar to the review of issues not raised to the BIA."). Even if Pierre did not explicitly raise to the BIA the arguments regarding government acquiescence she here raises, she did so implicitly by contending before the BIA, at which time she was proceeding *pro se*, that the gang threatening to harm her had connections in the government, including the police force; and that the police failed adequately to investigate the incident at her mother's home. *See Adams v. Holder*, 692 F.3d 91, 96 n.2 (2d Cir. 2012) (rejecting government's exhaustion argument and deeming record sufficient to demonstrate exhaustion where alien proceeded *pro se* before agency and alien implicitly raised arguments to BIA).

stating that they are waiting for Pierre and that she "should have kept her mouth shut." *Id.* at 95–96. Pierre testified that these incidents were initially meant to ensure that she kept quiet and, after her cooperation with the U.S. government resulted in the arrest of several confederates, to retaliate against her. The IJ noted that, based on the 2011 State Department Report for Haiti, there are "serious drug trafficking problems" in the country, as well as corruption. *Id.* at 75; *see also id.* at 297, 327 (State Department Report explaining incidents of mob violence and vigilante retribution and that, of 113 cases of vigilante lynchings, none resulted in arrest).

In concluding that Pierre failed to demonstrate government acquiescence, the BIA relied on a Haitian police report that suggested that police investigated the incident at her mother's home, and further explained that Pierre "presented no other evidence" of government acquiescence. CAR 3 (citing CAR 75 (IJ explaining that Pierre "fail[ed] to provide <u>any</u> evidence or testimony that connects the potential harm . . . to law enforcement" (emphasis added))). The latter statement appears to have "totally overlook[ed]" record evidence to the contrary, discussed above. *Mendez v. Holder*, 566 F.3d at 323

(recognizing that agency does not commit error of law every time item of evidence is not explicitly considered, but that error of law occurs where agency "totally overlook[s]" important evidence).  Moreover, this court has previously questioned whether "the preventative efforts of some government actors should foreclose the possibility of government acquiescence, as a matter of law, under the CAT."  *De La Rosa v. Holder*, 598 F.3d at 110; *see Celedon-Herrera v. Lynch*, --- F. App'x ---, 2015 WL 8116359, at *3 (2d Cir. Sept. 11, 2015) (relying on *De La Rosa* in granting petition for review where, in reviewing CAT claim, "IJ failed to analyze why the prompt response of some police officers in arresting suspects for Ramon's and his son's murders was sufficient to overcome the fact (accepted by the IJ) that the Honduran government is unable to control gang violence").

Accordingly, we remand for the agency to consider, consistent with the controlling precedent referenced (1) the evidence of government acquiescence, and (2) whether the Haitian police report is sufficient to overcome that evidence. *See De La Rosa v. Holder*, 598 F.3d at 110-11 (remanding for further consideration of government acquiescence legal

7

standard); *Mendez v. Holder*, 566 F.3d at 323 (remanding for consideration of overlooked evidence).

2.  Internal Relocation

The agency concluded that, even if Pierre satisfied her burden under the CAT, she failed to demonstrate that it would be "impossible" for her to relocate within Haiti to avoid torture because her mother had relocated after the incident in her home and had not been harmed or threatened thereafter. CAR 75.  Pierre argues that the agency mischaracterized the record in finding she could relocate within Haiti.  We agree.

The record indicates that Pierre's family members did not merely relocate but, rather, are in hiding.  *See id.* at 137 (explaining that her mother and other family members have "been in hiding ever since"); *id.* at 136–37 (testifying that Pierre's husband and Pierre's family are "in hiding").  Given the agency's mischaracterization of the record on this issue, we remand for the agency to consider in the first instance whether the fact that an applicant's family members are in hiding from those looking to do her harm establishes the possibility of her own internal relocation to a part of the country where she is not likely to be tortured.  *See* 8 C.F.R. § 1208.16(c)(3)(ii).

8

3.    Conclusion

For the foregoing reasons, the petition for review is GRANTED.    As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

                            FOR THE COURT:
                            Catherine O'Hagan Wolfe, Clerk of Court