*Santiaguez v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of September, two thousand twenty-two.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> BARRINGTON D. PARKER
> EUNICE C. LEE,
> *Circuit Judges*

_____

CASIMIRO SANTIAGUEZ, AKA JORGE SMET,

> *Petitioner*,

v.                                                                            20-1693

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

> *Respondent*.

_____

For Petitioner:           NOAH NIX, Student Counsel (Thomas V. Burch, Esq., Olivia B. Hunter, Student Counsel, Jared R. Allen, Student Counsel, *on the brief*), Appellate Litigation Clinic, University of Georgia School of Law, Athens, GA.

Paige Austin, *on the brief*, Make the Road New York, Brooklyn, N.Y.

For Respondent: VIRGINIA LUM, Trial Attorney, Office of Immigration Litigation, Civil Division (Brian Boynton, Acting Assistant Attorney General and Nancy E. Friedman, Senior Litigation Counsel, *on the brief*), United States Department of Justice, Washington, D.C.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **GRANTED**.

Casimiro Santiaguez, a native and citizen of Mexico, seeks review of a May 22, 2020 decision of the Board of Immigration Appeals ("BIA") affirming a November 20, 2019 decision of an Immigration Judge ("IJ") denying protection under the Convention Against Torture ("CAT"). *In re Casimiro Santiaguez*, No. A206-0320-068 (B.I.A. May 22, 2020), *aff'g* No. A206-032-068 (Immigr. Ct. N.Y.C. Nov. 20, 2019). We have reviewed the IJ's decision as supplemented by the BIA, *see Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005), and assume the parties' familiarity with the underlying facts and procedural history, which we discuss only as necessary to explain our decision to grant the petition.

## I. Standard for CAT Relief

To be eligible for CAT relief, an applicant must show that upon removal he "more likely than not would be tortured by, or with the acquiescence of, government officials acting in an official capacity." *Scarlett v. Barr*, 957 F.3d 316, 334 (2d Cir. 2020) (internal quotation marks omitted); *see* 8 C.F.R. §§ 1208.16(c), 1208.17(a), 1208.18(a)(1); *see also Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019) (noting the agency must address "two prongs . . . when evaluating a CAT claim": (1) "whether an applicant has met the burden of establishing that it is more likely than not [he] would be tortured if removed" and (2) "whether public officials will acquiesce in the likely treatment" (internal quotation marks omitted)). "[A]cquiescence is demonstrated by

2

evidence that government officials know of or remain willfully blind to an act [of torture] and thereafter breach their legal responsibility to prevent it." *Scarlett*, 957 F.3d at 334 (quoting *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004)). "A *private* actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene." *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007). The BIA has held that CAT relief "must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible . . . claims." *Matter of J-R-G-P-*, 27 I. & N. Dec. 482, 484 (B.I.A. 2018) (quoting *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015)).

On appeal of an agency's decision, this court reviews factual challenges to CAT orders under the substantial-evidence standard, pursuant to which the "agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)). "A determination of what will occur in the future and the degree of likelihood of the occurrence has been regularly regarded as fact-finding subject to only clear error review." *Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012).

## II.     Substantial Evidence

Santiaguez contends that the agency failed to appropriately weigh evidence demonstrating that he faced a risk of torture if he returned to Mexico due to his status as an indigenous gay man and advocate for transgender rights. In denying his petition for CAT relief, the agency acknowledged that Santiaguez is an indigenous gay man and LGBT activist and that there is widespread violence against members of the LGBT community throughout Mexico. Nonetheless, the agency concluded that Santiaguez failed to satisfy his burden for CAT relief because he did not establish

a likelihood that Mexican authorities would either torture him directly or acquiesce to his torture by private actors.   In reaching this conclusion, the agency erred in several respects.

First, the agency found that the Coordinadora Regional de Autoridades Comunitarias–Policia Comunitaria ("CRAC-PC"), a volunteer communal police force established by the indigenous community in the state of Guerrero, would neither torture Santiaguez nor acquiesce in his torture, because it had reacted to the death of Santiaguez's brother, who was murdered for being gay, by convicting and sentencing the murderer to 80 years in the communal judicial system.   The agency reasoned that the CRAC-PC's responded to Santiaguez's brother's murder undermined Santiaguez's contention that members of the CRAC-PC, itself, posed a risk of LGBT-targeted violence.   Critically, however, this finding does not bolster the agency's acquiescence conclusion. The CRAC-PC is not a governmental organization but rather a private, volunteer security force operating in a part of Mexico where governmental protections have proven inadequate.   *See* 8 C.F.R. § 1208.18(a) (defining torture as an act by a *public official* or an act with the consent or acquiescence of a *public official*); *see also Khouzam*, 361 F.3d at 171 (defining acquiescence as requiring "only that *government officials* know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it" (emphasis added)).   Accordingly, the IJ erred by assessing the CRAC-PC as if it were a government actor, whose actions are reflective of Mexican public officials' opposition to LGBT violence.

The IJ additionally discredited Santiaguez's acquiescence arguments based on an incident in which the Mexican police took control of 12 towns in Guerrero after the community police force helped drug gangs disappear 43 student protestors, explaining that this evidence showed that Mexican officials can and do intervene.   However, the IJ's determination that a police response to the kidnapping of a large number of students supports a conclusion that police might do the same to

4

protect LGBT individuals is wholly speculative and, even more, is contradicted by evidence that Mexican public officials do not investigate or punish those who abuse sexual minorities. *See Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("[W]e will reject a deduction made by an IJ only when there is a complete absence of probative facts to support it—that is, when the speculation is bald." (internal quotation marks omitted)). The IJ's acknowledgement that the Mexican police suffer from widespread corruption and that 94 percent of crimes go unreported or are not investigated does not excuse the agency's failure to address significant record evidence that police intentionally do not investigate or punish violence against the LGBT community. *See Manning v. Barr*, 954 F.3d 477, 486–87 (2d Cir. 2020) (remanding where the IJ and BIA overlooked evidence material to the possibility of future torture).

The IJ further erred in finding that a police superintendent's letter, which states that Santiaguez would not be safe from violence in Mexico, undermines a finding of government acquiescence because it "evinces a concern by local authorities as to the safety and well-being of [Santiaguez]." C.A.R. 62. As this Court has explained, "[w]here a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture, the fact that some officials take action to prevent the torture [is] neither inconsistent with a finding of government acquiescence nor necessarily responsive to the question of whether torture would be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *De La Rosa v. Holder*, 598 F.3d 103, 110 (2d Cir. 2010) (internal quotation marks omitted). Here, the fact that a police officer expressed sympathy towards Santiaguez for the danger he faces is even less responsive to the question of acquiescence than a few officials taking action to prevent torture. *See id.* As the Court sees it, the letter tends to support Santiaguez's assertion that the government

5

will acquiesce in his torture because it shows that a police superintendent is aware of the danger Santiaguez faces and does not think that he can be protected. Indeed, the police superintendent urged Santiaguez to "stay away from here to avoid suffering the same misfortune as his brother" and admitted "[t]he reality . . . that if [Santiaguez] returns to Mexico, his life is in danger in this locality and in Mexico in general." C.A.R. 384.

The IJ also erred in stating that the evidence does not show that Mexican officials torture or kill members of the LGBT community or acquiesce in such torture when the record in fact contains evidence of police involvement in, and incitement of, violence against sexual minorities. *See Manning*, 954 F.3d at 486–87. Moreover, the record supports the existence of a heightened risk to Santiaguez, in particular, as a result of his public-facing advocacy for LGBT rights, which increases the likelihood that he could be identified and targeted for his affiliations. And, although the agency recognized that Santiaguez's claim was based in part on his indigenous status, it did not consider whether that fact would make it more likely that Mexican officials would acquiesce to torture. Contrary to the agency's conclusions, the record includes evidence that the police and armed forces perpetrate violence against and exhibit indifference towards indigenous, as well as LGBT, Mexicans. *See id.*; *see also Tian-Yong Chen v. U.S. I.N.S.*, 359 F.3d 121, 128 (2d Cir. 2004) (finding the BIA's decision "fatally flawed" when the agency ignored evidence that petitioner had been beaten).

The only findings that are not infected by error and provide support for the agency's decision are that Santiaguez's family did not seek help from government officials after his brother's murder and that the federal government has taken steps to promote equality for the LGBT community and increase penalties for hate crimes based on sexual orientation or gender identity. However, those findings alone are not sufficient in light of the agency's multiple errors, namely:

6

(1) its bald speculation that the official police response to a mass student kidnapping shows that police will respond to violence against LGBT individuals; (2) its unsupported conclusion that one police officer's expression of sympathy shows that other police officers will not acquiesce in torture; and (3) its failure to consider material evidence of public officials' violence against the LGBT and indigenous communities. *See Manning*, 954 F.3d at 486–87; *see also Tian-Yong Chen*, 359 F.3d at 128. Accordingly, we remand for the agency to fully evaluate the record evidence. *See Manning*, 954 F.3d at 487; *see also De La Rosa*, 598 F.3d at 110–11.

\*   \*   \*

The Court has considered Santiaguez's remaining arguments and finds them to be without merit. Accordingly, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

7