**13-203-ag**
*Pan v. Holder*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2014

ARGUED: AUGUST 20, 2014
DECIDED: JANUARY 26, 2015

No. 13-203-ag

ALEKSANDR PAN,
*Petitioner.*

*v.*

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL
*Respondent.*

————

Appeal from the Board of Immigration Appeals.
File: A 093 354 217 – New York, NY.

————

Before: WALKER, WESLEY, and LIVINGSTON, *Circuit Judges*.

————

Aleksandr Pan petitions for review of the January 7, 2013 order of the Board of Immigration Appeals (BIA) dismissing his appeal from an immigration judge's (IJ) denial of his applications for asylum, withholding of removal, and relief pursuant to the

Convention Against Torture (CAT). For the reasons that follow, we conclude that the IJ and BIA failed to consider significant record evidence related to Pan's claim of past persecution. Therefore, we grant the petition for review, vacate the BIA's order in part, and remand for further proceedings.

––––––––

> JUDY RESNICK, Law Office of Judy Resnick, Far Rockaway, NY, *for Petitioner*.
>
> JESSE DAVID LORENZ (Stuart F. Delery, Emily Anne Radford, Thanh Khiet T. Nguyen, Craig A. Newell, Jr., *on the brief*), U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, *for Respondent.*

––––––––

JOHN M. WALKER, JR., *Circuit Judge*:

Aleksandr Pan petitions for review of the January 7, 2013 order of the Board of Immigration Appeals (BIA) dismissing his appeal from an immigration judge's (IJ) denial of his applications for asylum, withholding of removal, and relief pursuant to the Convention Against Torture (CAT). For the reasons that follow, we conclude that the IJ and BIA failed to consider significant record evidence related to Pan's claim of past persecution. Therefore, we grant the petition for review, vacate the BIA's order in part, and remand for further proceedings.

**BACKGROUND**

Pan, a citizen and native of the Kyrgyz Republic, entered the United States on May 9, 2008, under a visitor non-immigrant visa. On May 8, 2009, Pan filed an asylum request claiming that he was persecuted because he is an ethnic Korean and an Evangelical Christian.

At his June 28, 2010 removal proceeding, the IJ noted that Pan credibly testified about several incidents in which he and his family were targeted for mistreatment because of their religion and ethnicity. Pan testified that in his early school years other students beat him because they knew he was an Evangelical Christian. His parents complained to school administrators, but the administrators dismissed the complaints as a "normal phenomenon" in the school. Jt. App'x 120.  In 1992, when Pan was about five years old, neighbors hanged his dog from his family's fence. Later, neighbors lit the fence on fire.

After his family moved to a new apartment, Pan's father began holding religious services in their home. When Pan was seven or eight, the police interrupted his father's services. They detained and questioned his father and the other attendees for five hours. In 1997, the family moved again because of harassment. In 1998, Pan's father built and opened a new church outside of Bishkek, and Pan began proselytizing on its behalf.

In April 2004, during Pan's final year of high school, some classmates attacked him and called him a "sectant face." Jt. App'x 302. After this attack, Pan missed a week of school. In 2005, four men beat Pan and a friend as they handed out church pamphlets in the marketplace. A crowd stood by and watched the men beat Pan, and no one called the police. Pan explained that he did not call the police after this incident because the Kyrgyz police are "very corrupt" and "if they're going to do something for you they're going to want something in exchange." Jt. App'x 136. Pan added that he feared he would only get in further trouble if the police learned that he had been handing out Christian pamphlets. In July 2007, Pan left the church late after helping with a youth seminar. While he was walking home, an unknown assailant struck Pan from behind on the head. Pan lost consciousness for a few hours, went to the hospital, and was diagnosed with a concussion. Pan reported this attack to the police, but they told Pan they would not investigate because he had not seen his assailant.

Pan's aunt, Galina Pan, also testified on Pan's behalf. Galina Pan, who lived in the same town as Pan and attended his father's church, was granted asylum in the United States in 2006. Galina Pan testified to an attack on the church by five men in 2001. The attackers injured her and many other many parishioners. The parishioners filed a complaint with the police, but, "[t]here was no reaction

whatsoever, as [was] usually the case." Jt. App'x 155. Galina Pan's affidavit in support of her 2006 asylum application was also received into evidence. The affidavit described, among other incidents, an occasion on which the police ordered Galina Pan to report to the precinct and answer questions about her faith, Pan's father, and other parishioners. The police warned her that they would take action against the members of the church "who attract people to church" if more ethnic Kyrgyzes joined the church. The affidavit also described how, in July 2004, three men attacked Galina Pan outside her house and gave her a concussion. The hospital alerted the police, and a policeman came to the hospital and wrote a report but investigated no further.

Finally, Pan submitted secondary materials that included reports from the U.S. State Department. In particular, the State Department's 2009 Human Rights Report describes corruption as "endemic" at all levels of Kyrgyz society and how "officials engaged in corrupt practices with impunity." Jt. App'x 271. The report also describes a 2009 law that banned proselytizing, religious conversions, private religious education, and all activities by unregistered religious organizations, while at the same time enlarging the membership necessary to register as a religious organization.

On October 14, 2010, Immigration Judge Sandy K. Hom denied Pan's applications. The IJ credited Pan's and Galina Pan's testimony, but found that the mistreatment Pan suffered "represented, at best, hate crimes." *In re Aleksandr Pan*, No. A 093 354 217 (Immig. Ct. N.Y.C. Oct. 14, 2010). The IJ also found that Pan failed to establish that the Kyrgyz government failed to protect Pan, Koreans, or Evangelical Christians because many of the incidents were not reported to the police, and Pan was unable to identify the attacker in the one incident he did report. The IJ disregarded Galina Pan's testimony and affidavit because they did not tend to establish persecution of Pan.

The BIA affirmed the IJ's decision and dismissed Pan's appeal. Reviewing the IJ's decision *de novo*, the BIA found that "private citizens targeted [Pan] on account of his Korean ethnicity or his religious beliefs," but that "the verbal and physical abuse he experienced was [not] sufficiently egregious to rise to the level of past persecution." *In re Aleksandr Pan*, No. A 093 354 217 (B.I.A. Jan. 7, 2013). Like the IJ, the BIA did not discuss Galina Pan's testimony or affidavit. Based on the evidence it did consider, the BIA concluded that Pan failed to demonstrate that the Kyrgyz government is unable or unwilling to protect him from the harm that he fears. *Id*. Thus, though for somewhat different reasons, the

BIA agreed with the IJ that Pan failed to show that he suffered past persecution or had a well-founded fear of future persecution. *Id.*

Pan timely petitioned this court for review of the denial of his claim for asylum and withholding of removal, but not his claim under the CAT.

**DISCUSSION**

Because the BIA did not expressly adopt the IJ's decision, but "its brief opinion closely track[ed] the IJ's reasoning," we have reviewed the opinions of both the IJ and the BIA "for the sake of completeness." *Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008) (internal quotation marks omitted). We review the IJ's factual findings under the substantial evidence standard, treating them as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Questions of law and the agency's application of law to fact are reviewed *de novo*. *Centurion v. Holder*, 755 F.3d 115, 119 (2d Cir. 2014).

To qualify as a refugee and establish eligibility for asylum or withholding of removal, an applicant must establish that he was persecuted or has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). A well-founded fear involves both an objective and subjective component. The subjective

component may be based on the applicant's reaction to events, while the objective component must be supported by "proof or objective facts that lend support to the applicant's subjective fear." *Melgar de Torres v. Reno*, 191 F.3d 307, 311 (2d Cir. 1999). A showing that the applicant was a victim of past persecution creates a presumption that a well-founded fear of future persecution exists. *Id.* (citing 8 C.F.R. § 208.13(b)(1)(i)). Persecution by government actors does not encompass simple harassment, but "violent conduct [amounting to persecution] generally goes beyond the mere annoyance and distress that characterize harassment." *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 342 (2d Cir. 2006). Private acts can also constitute persecution if the government is unable or unwilling to control such actions. *Pavlova v. I.N.S.*, 441 F.3d 82, 91 (2d Cir. 2006).

Here, there was no issue as to Pan's credibility and the IJ found that Pan indeed suffered the mistreatment to which he testified. The IJ concluded, however, that Pan was not a victim of persecution because "the offending events, individually or collectively, represented, at best, hate crimes." The IJ added that "[a] hate crime, *per se*, is a criminal act that is not a sufficient basis to find persecution." *In re Aleksandr Pan*, No. A 093 354 217, slip op. at 13. Similarly, although the BIA found that Pan was targeted for mistreatment "on account of his Korean ethnicity or his religious beliefs," it found that the abuse he experienced was insufficiently

egregious to rise to the level of persecution. *In re Aleksandr Pan*, No. A 093 354 217, slip op. at 2.

In our view, the record does not support either the IJ's or the BIA's characterization of the abuse Pan suffered. Pan credibly testified about three beatings he received over a four-year period, the last of which resulted in a two-week hospitalization. The BIA has concluded elsewhere that an asylum applicant who suffered similar violence was a victim of persecution. *See In re O-Z- and I-Z-*, 22 I. & N. Dec. 23, 25-26 (B.I.A. 1998) (finding persecution where a father was beaten three times and his son was beaten and humiliated by his classmates). We have also indicated that similar allegations of violence, if found credible, would preclude a finding of mere harassment. *See Ivanishvili*, 433 F.3d at 342 (three violent attacks accompanied by death threats).

The IJ and BIA made no attempt to explain how the violence Pan suffered differed from that suffered by other applicants who have been granted asylum. That failure is significant because "it is a fundamental principle of justice that 'similarly situated individuals be treated similarly.'" *Zhang v. Gonzales*, 452 F.3d 167, 173 (2d Cir. 2006) (quoting *Njuguna v. Ashcroft*, 374 F.3d 765, 771 n.4 (9th Cir. 2004)); *see also Davila-Bardales v. I.N.S.*, 27 F.3d 1, 5 (1st Cir. 1994) ("If an administrative agency decides to depart significantly from its

own precedent, it must confront the issue squarely and explain why the departure is reasonable.").

We also take issue with the IJ's view that "a hate crime, *per se*, is a criminal act that is not a sufficient basis to find persecution." *In re Aleksandr Pan*, No. A 093 354 217, slip op. at 13. Although some hate crimes may not amount to persecution, conduct that rises to the level of persecution either by the government or with its acquiescence may also be a hate crime. Indeed, hatred of a group that manifests itself in violent crimes against members of that group would seem to be at the core of persecution.

We also reject the BIA's alternative finding that Pan failed to establish that the Kyrgyz government was unable or unwilling to protect him. *Cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 161 (2d Cir. 2006) (denying a petition challenging a rejection of an asylum claim despite errors committed by the IJ where, inter alia, "the IJ explicitly relie[d] on a valid alternative ground for denying relief that [was] not tainted by error"). The IJ observed that Pan failed to report some of the mistreatment to the police and that he was unable to identify his attacker when he did file a report, and the BIA found that the evidence Pan presented failed to establish that the government was unable or unwilling to protect him.

We need not decide whether Pan's unwillingness to confront the police is fatal to his asylum claim because we find that both the IJ

and BIA ignored ample record evidence tending to show that the Kyrgyz police were unwilling to investigate the abuse suffered by Pan and his family. *See Yan Chen v. Gonzales*, 417 F.3d 268, 272 (2d Cir. 2005) (granting petition for review and remanding where the IJ and BIA failed to consider relevant evidence).

First, Pan testified that he did not report the 2005 marketplace beating because the police were corrupt and would not help without receiving something in exchange and because such a report might get him into further trouble. Pan's testimony about police corruption—which was deemed credible by the IJ—is corroborated by the State Department's 2009 Human Rights report. *See Hong Ying Gao v. Gonzales*, 440 F.3d 62, 71 (2d Cir. 2006) (country report stating that efforts to combat trafficking were hampered by corruption supported a finding that government would not protect applicant from private abuse), *judgment vacated on other grounds sub nom. Keisler v. Hong Yin Gao*, 552 U.S. 801 (2007). Neither the IJ nor the BIA analyzed the impact of police corruption on the government's willingness and ability to protect Pan.

Second, the IJ disregarded Galina Pan's testimony because she lacked personal knowledge of Pan's experiences. To be sure, each asylum claim must be considered on its own merits. *In re Mogharrabi*, 19 I. & N. Dec. 439, 446 (B.I.A. 1987). However, police unwillingness to protect a similarly-situated refugee may establish that the

government is unable or unwilling to protect the applicant. *See, e.g.,* *Abankwah v. I.N.S.*, 185 F.3d 18, 25-26 (2d Cir. 1999) (minister's testimony about inability of Ghanaian government to prevent female genital mutilation supported applicant's claim that she would be subject to FGM); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1117-18 (9th Cir. 2004) (police inaction in response to attacks against sons supported mother's asylum claim).

Galina Pan testified (and, again, was found to be credible by the IJ) that the police, as usual, did nothing in response to the 2001 attack on her (and Pan's) church. Her affidavit also described how the police failed to do anything other than write a report after her 2004 beating. Such police inaction in response to the significant violence Galina Pan suffered tends to prove that the government is unwilling to protect its citizens and should have been considered by the adjudicating authorities below. *See in re O-Z- & I-Z-*, 22 I. & N. Dec. at 23 ("[g]overnment was unable or unwilling to control the [applicant's] attackers" where "police . . . took no action beyond writing a report"). Given the similarities between Pan's and Galina Pan's claims of persecution on account of their Korean ethnicity and Evangelical Christianity, it was error for the IJ and BIA to ignore record evidence that the Kyrgyz authorities were unwilling to protect Galina Pan from persecution. *See Yan Chen*, 417 F.3d at 272.

In sum, we grant Pan's petition for review because the IJ and BIA: (1) failed to adequately explain why the significant violence Pan suffered was insufficiently egregious to constitute persecution and (2) failed to consider record evidence of Galina Pan's testimony and affidavit, which tend to prove that the Kyrgyz police are unwilling or unable to protect Pan from private persecutors. We therefore vacate the BIA's findings that Pan was not a victim of past persecution and did not have a well-founded fear of future persecution.

Accordingly, we vacate the denial of asylum and the derivative denial of withholding of removal. We leave undisturbed the denial of Pan's CAT claim, which was not appealed.

## CONCLUSION

For the reasons stated above, we GRANT the petition for review, VACATE the judgment of the Board of Immigration Appeals in part, and REMAND for further proceedings consistent with this opinion.