Celedon-Herrera v. Lynch

BIA
Poczter, IJ
A200 615 405

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of September, two thousand fifteen.

PRESENT:
>JOHN M. WALKER, JR.,
>BARRINGTON D. PARKER,
>CHRISTOPHER F. DRONEY,
>>*Circuit Judges.*

_____

WALTER U. CELEDON-HERRERA,
>*Petitioner,*

>v.                                              13-2404
>                                                NAC

LORETTA E. LYNCH,* UNITED STATES
ATTORNEY GENERAL,
>*Respondent.*

_____

FOR PETITIONER:             Heather Yvonne Axford, Central
                            American Legal Assistance,
                            Brooklyn, New York.

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Loretta E. Lynch is automatically substituted for former Attorney General Eric H. Holder, Jr.

**FOR RESPONDENT:** Joyce R. Branda, Acting Assistant Attorney General; John S. Hogan, Senior Litigation Counsel; Rebecca Hoffberg Pjillips, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner  Walter U. Celedon-Herrera, a native and citizen of Honduras, seeks review of a May 20, 2013, decision of the BIA affirming a January 27, 2012, decision of an Immigration Judge ("IJ") denying Celedon-Herrera's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  *In re Walter U. Celedon-Herrera,* No. A200 615 405 (B.I.A. May 20, 2013), *aff'g* No. A200 615 405 (Immig. Ct. N.Y. City Jan. 27, 2012).  We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have considered both the IJ's and the BIA's opinions "for the sake of completeness."  *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006).  The applicable standards of review

are well established.  8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

**I.  Asylum and Withholding of Removal**

In support of his asylum and withholding of removal claims, Celedon-Herrera asserted that  MS-13  gang members in Honduras threatened and robbed him, and murdered his  nephew  and step-niece on account of their membership in the particular social group of the family of Celedon-Herrera's murdered brother Ramon (against whom the gang had a vendetta).  To establish eligibility for asylum or withholding of removal, an applicant must show past persecution or a well-founded fear or likelihood of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir.  2004).  "Private acts can [] constitute persecution if the government is unable or unwilling to control such actions."  *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015).

Here, the agency provided the following three alternative bases for denying asylum and withholding of removal: (1) Celedon-Herrera failed to demonstrate past persecution or a well-founded fear of future persecution; (2) he failed to establish that the harm he suffered and fears was on account

3

of his membership in a particular social group; and (3) he did not demonstrate that the Honduran government is unable or unwilling to protect him. Because the agency erred in making each of these determinations, remand is required.

Although the agency reasonably determined that Celedon-Herrera had not suffered past persecution based on harm to his relatives and unfulfilled threats, *see Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 308 (2d Cir. 2007); *Ci Pan v. U.S. Att'y Gen.*, 449 F.3d 408, 412-13 (2d Cir. 2006), it erred in its determination that his fear of future harm was not objectively reasonable, *see Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000) (providing that a fear is objectively reasonable "even if there is only a slight, though discernible, chance of persecution." (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987))). We have recognized that the agency may question the objective reasonableness of an applicant's claimed fear of persecution when similarly situated relatives remain unharmed in their native country. *See Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999).

Here, the agency found Celendon-Herrera's fear of harm diminished because his parents and sisters remain unharmed in Honduras. However, it failed to recognize that

4

Celedon-Herrera's father is not similarly situated (he is not Ramon's father and thus is not a member of the proposed social group) and that, unlike Celedon-Herrera, his sisters (Ramon's half-sisters) did not have a close relationship with Ramon or even attend his funeral. Therefore, because Ramon's son and step-daughter were murdered and Ramon's widow fled to El Salvador, Celedon-Herrera's mother is the only close relative of Ramon who remains unharmed in Honduras. We cannot "confidently predict" that the agency would find this fact alone sufficient to determine that Celedon-Herrera's fear of persecution was not objectively reasonable. *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 339 (2d Cir. 2006).

The agency also erred in its determination that the harm Celedon-Herrera feared was not on account of a protected ground. We have recognized that kinship ties or membership in a family "may form a cognizable shared characteristic for a particular social group." *Vumi v. Gonzales*, 502 F.3d 150, 155 (2d Cir. 2007). And, "asylum may be granted where there is more than one motive for mistreatment, as long as at least one central reason for the mistreatment is on account of a protected ground." *Acharya v. Holder*, 761 F.3d 289, 297 (2d Cir. 2014) (internal quotation marks omitted).

5

Although the agency assumed that a family is a cognizable social group, it erred in determining that gang members targeted Celedon-Herrera solely on account of a personal vendetta without considering the possibility that they were also motivated by his membership in the particular social group of Ramon's family. As the IJ found, Celedon-Herrera's credible testimony established that gang members were motivated to murder Ramon for revenge and extortion, which are not protected grounds under the Immigration and Nationality Act. *See Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007); *see also Koudriachova v. Gonzales*, 490 F.3d 255, 261-62 (2d Cir. 2007). However, gang members targeted Celedon-Herrera, not because they had a personal vendetta against him, but because he was the brother of Ramon. Indeed, there is nothing in the record to suggest that gang members would have targeted Celedon-Herrera had he not been Ramon's kin. Accordingly, the agency's failure to explicitly conduct a mixed motive analysis constitutes reversible error. *See Acharya*, 761 F.3d at 298-99 ("[T]he possibility of multiple motives for persecution precludes this type of either/or approach to evaluating asylum claims.").

The agency also erred in its determination that the record established that the Honduran government was able and willing to protect Celedon-Herrera from gang members. As the IJ recognized, the country conditions evidence demonstrated that the Honduran government was unable to protect the population from the estimated 70,000 MS-13 gang members in that country. Nevertheless, the agency found it significant that police had arrested four suspects in Ramon's and his son's murders and had taken a report when Celedon-Herrera's store was robbed. However, the agency failed to adequately explain how these arrests demonstrated the police's ability to protect Celedon-Herrera. Arrested gang members are able to communicate with members outside of prison, and, despite those arrests, police were unable to protect Ramon's stepdaughter from being murdered on the front porch of her home (where Ramon's widow was living). And the police did not arrest anyone for that murder. Furthermore, there is nothing to suggest that the police took any action beyond writing a report in Celedon-Herrera's robbery case. Accordingly, the agency failed to adequately explain its determination that police are able and willing to protect Celedon-Herrera. *See Pan*, 777 F.3d at 544-45.

7

## II.  CAT Relief

The act of torture is defined as "'any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person' . . . by or acquiesced in by government actors."  *Pierre v. Gonzales*, 502 F.3d 109, 114, 118 (2d Cir. 2007) (quoting 8 C.F.R. § 208.18(a)(1) and citing CAT art. 1).  "[T]orture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it."  *Khouzam v. Ashcroft*, 361 F.3d 161, 172 (2d Cir. 2004).

We have questioned whether "the preventative efforts of some government actors should foreclose the possibility of government acquiescence, as a matter of law, under the CAT."  *De La Rosa v. Holder*, 598 F.3d 103, 110 (2d Cir. 2010).

> Where a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture, the fact that some officials take action to prevent the torture would seem neither inconsistent with a finding of government acquiescence nor necessarily responsive to the questions of whether torture would be inflicted by or at the instigation of or with the consent

or acquiescence of a public official or other person acting in an official capacity.

*Id.* at 110. (internal quotation marks omitted).

Here, as in *De La Rosa*, the IJ failed to analyze why the prompt response of some police officers in arresting suspects for Ramon's and his son's murders was sufficient to overcome the fact (accepted by the IJ) that the Honduran government is unable to control gang violence. This was particularly problematic given that the response did not actually prevent additional murders of Ramon's family members from occurring. *See id.* at 110-11.

For the foregoing reasons, the petition for review is GRANTED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9