*Flores Anyosa v. Whitaker*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of December, two thousand eighteen.

PRESENT:

>JON O. NEWMAN,
>SUSAN L. CARNEY,
>RICHARD J. SULLIVAN,
>>*Circuit Judges.*

_____

CARLOS AUGUSTO FLORES ANYOSA,
>*Petitioner*,

v.                                                          No. 16-1474

MATTHEW G. WHITAKER,
Acting Attorney General of the United States,
>*Respondent.*

_____

FOR PETITIONER:                    DAVID A. ISAACSON, Cyrus D. Mehta & Partners PLLC, New York, New York.

FOR RESPONDENT:                    MATTHEW GEORGE, Trial Attorney (Rebekah Nahas, Trial Attorney, *on the brief*) for Chad A. Readler, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of the decision of the Board of Immigration Appeals ("BIA") dated April 13, 2016, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Carlos Augusto Flores Anyosa ("Flores"), a native and citizen of Peru, seeks review of an April 13, 2016 decision of the BIA affirming a September 9, 2014 decision of an Immigration Judge ("IJ") that denied Flores's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Carlos Augusto Flores Anyosa,* No. A 205 137 491 (B.I.A. Apr. 13, 2016), *aff'g* No. A 205 137 491 (Immig. Ct. N.Y. City Sept. 9, 2014). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to deny the petition for review.

Under the circumstances of this case, we review both the IJ's and BIA's opinions "for the sake of completeness." *Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006). In the proceedings before the IJ and the BIA, Flores bore the burden of establishing past persecution or an objectively reasonable well-founded fear of future persecution. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a), (b); *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006). Because the IJ and the BIA found that Flores testified credibly in all respects, we treat his factual claims as undisputed and review *de novo* the legal question whether the facts alleged establish past persecution or a well-founded fear of future persecution. *Mirzoyan v. Gonzales*, 457 F.3d 217, 220 (2d Cir. 2006). We examine the record to determine whether substantial evidence supports the agency's finding that Flores did not show the Peruvian police were unwilling or unable to protect him against any threatened harm. *Diallo v. I.N.S.*, 232 F.3d 279, 287 (2d Cir. 2000).

I.

Flores first challenges the IJ and BIA's determination that he failed to demonstrate that he had suffered past persecution. We have defined persecution as "the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground." *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 341 (2d Cir. 2006). Persecution includes "non-

life-threatening violence and physical abuse, or non-physical forms of harm such as the deliberate imposition of a substantial economic disadvantage." *Id.* (internal quotation marks and citation omitted). It does not, however, include "mere harassment" or "every sort of treatment our society regards as offensive." *Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) (internal quotation marks omitted).

We have held that, generally speaking, "threats of persecution, no matter how credible, do not [on their own] demonstrate past persecution." *Huo Qiang Chen v. Holder*, 773 F.3d 396, 406 (2d Cir. 2014) (holding that Chinese government's threat to impose a fine equivalent to twenty times petitioner's income did not constitute past persecution because threat was not actually fulfilled). Indeed, as the Ninth Circuit has observed, "if mere threats . . . were enough to constitute past persecution, then it is not clear what would be left of the [well-founded fear of future persecution] category. That is, it is not clear what conduct under such a rule would ever trigger a well-founded fear without simultaneously constituting past persecution itself." *Lim v. I.N.S.*, 224 F.3d 929, 937 (9th Cir. 2000).

Flores concedes that neither he nor his family members were physically harmed by the Los Norteños gang, but argues that *Huo Qiang Chen* is distinguishable because it focused on unfulfilled economic threats, not death threats, in concluding that the petitioner failed to establish past persecution. But nothing in the reasoning of *Huo Qiang Chen* is limited to threats of a nature different than death threats. Indeed, in *Huo Qiang Chen* we cited with approval *Lim*, 224 F.3d at 932–33, which involved death threats. 773 F.3d at 406.

A narrow exception to the rule that the mere receipt of threats generally does not demonstrate past persecution may exist in "certain extreme cases [where] repeated and especially menacing death threats can constitute a primary part of a past persecution claim, particularly where those threats are combined with confrontation or other mistreatment." *Lim*, 224 F.3d at 936; *see also Chavarria v. Gonzalez*, 446 F.3d 508, 520 (3d Cir. 2006) (finding past persecution where persecutors held a gun and a knife to petitioner's head and told him they would kill him if they saw him again). Although the Peruvian gang's conduct towards Flores was menacing, the circumstances in Flores's case do not place the threats made to him firmly in the *Chavarria* category.

3

Flores also posits that the emotional and psychological harm he suffered demonstrates that he was persecuted, contending that the agency erred by not analyzing that harm cumulatively with the damage to his home, loss of his job, and confinement. But the record reflects that the agency did consider Flores's harm cumulatively: the IJ's decision considered the "cumulative nature of Los Norteños' conduct," and acknowledged that Flores's psychological harm must be considered in the context of the mistreatment he suffered. A.R. 47–48; *see also Beskovic v. Gonzales*, 467 F.3d 223, 226 (2d Cir. 2006) ("[W]hile the difference between harassment and persecution is necessarily one of degree . . . the degree must be assessed with regard to the *context* in which the mistreatment occurs." (internal quotation marks and citation omitted)). The agency expressly took note of the phone calls that Flores received, as well as the threats and vandalism incident, before concluding that Flores's harm did not rise to the level of persecution. We identify no error in its conclusion that Flores did not establish past persecution.

## II.

Flores also contends that the agency erred in finding that he failed to show that his fear of future persecution was objectively reasonable. As we have ruled in the past, such a fear "may be well-founded even if there is only a slight, though discernible, chance of persecution." *Yan Chen v. Gonzales*, 417 F.3d 268, 270 (2d Cir. 2005) (quoting *Diallo*, 232 F.3d at 284); *cf. Celedon-Herrera v. Lynch*, 627 F. App'x 6, 8 (2d Cir. 2015) (concluding that BIA's finding that petitioner did not have objectively reasonable fear of future persecution was erroneous in case involving threats by gangs). As the agency acknowledged, Flores credibly testified that, while he hid in a back room, members of Los Norteños attacked his home, broke his windows and showered his living room with rocks, at least one of which had a menacing written death threat attached. After the attack, he daily received threatening phone calls that demonstrated that the gang had a specific understanding of his daily routine, including the time that he traveled to and from work and at what time and where he would meet his girlfriend. Flores testified that he perceived these threats to be so severe and credible that he became a "prisoner in [his] own house," confining himself there continuously from November 15 (the date of the attack) to December 11, 2011 (the date

4

that he fled the country). A.R. 112, 119, 139. In an affidavit, Flores emphasized that he left his home only once during this period, when, on November 17, he went to tender his resignation to his employer.

The IJ found, and the BIA affirmed, that because Los Norteños had information about Flores's whereabouts and nevertheless "failed to carry out their threats" while he hid in his home for several weeks, Flores's fear of future persecution by the gang was not objectively reasonable. A.R. 48. This standard is too exacting. While (as we have noted) unfulfilled threats do not typically constitute past persecution, we have held that they may form the basis for an objectively reasonable well-founded fear of future persecution. *See Huo Qiang Chen*, 773 F.3d at 408–10 (rejecting as erroneous BIA's determination that petitioner failed to demonstrate a well-founded fear of *future* persecution, while affirming BIA's determination that the same unfulfilled economic threats were insufficient to demonstrate *past* persecution). When death threats are involved, to rule that these threats must have been "carried out" to give rise to a well-founded fear of future persecution would lead to the absurd requirement that the petitioner have been killed (or at least have suffered an attempt on his life) before becoming eligible for asylum on this ground.

Ultimately, however, we need not decide whether the BIA erred in finding that Flores's fear of future persecution was well-founded and objectively reasonable. Because Flores's fear of future persecution arose from conduct by a non-state actor, to qualify for asylum he must additionally prove that the Peruvian government is unwilling or unable to protect him from harm. *See Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015) ("Private acts can . . . constitute persecution if the government is unable or unwilling to control such actions."). In this case, the IJ and the BIA concluded that Flores did not sufficiently establish that the Peruvian government was unwilling or unable to protect him from Los Norteños' actions. Because this is a factual determination, our review is limited to determining whether the IJ and BIA's finding is supported by substantial evidence. *See Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("So long as there is a basis in the evidence for a challenged inference, we do not question whether a different inference was available or more likely.").

5

In this regard, the record demonstrates that the Peruvian police took some actions in response to Flores's complaints that he was being threatened. Officers made an official report on October 28, 2011, reflecting Flores's allegations against a specific Los Norteños gang member, Antony Perez. After Los Norteños vandalized his home, the police came to his residence in response to his report and photographed the crime scene. The fact that the police did not arrest the Los Norteños gang members during the several-week period after the attack on Flores's home, when he continued to receive intimidating calls, does not sufficiently demonstrate that they were "unwilling or unable" to protect Flores. Flores's expert and Department of State reports do provide general evidence of police corruption and inefficiency in Peru, but they are insufficiently particularized to Flores's local area and situation to negate the agency's conclusion. The record is silent as to the developments in any police investigation after Flores departed Peru in December 2011. While the evidence of police response in Lima is hardly overwhelming, we conclude that the IJ and BIA's finding is nonetheless supported by substantial evidence.

Flores's petition for review must therefore be denied. For the same reason, we conclude that Flores has not met the higher standard required to succeed on his claims for withholding of removal and CAT relief. *See Paul*, 444 F.3d at 156; *Kyaw Zwar Tun v. U.S. INS*, 445 F.3d 554, 567 (2d Cir. 2006).

* * *

We have considered Flores's remaining arguments and conclude that they lack merit. For the foregoing reasons, the petition for review is DENIED. As we have completed our review, the stay of removal that the Court previously granted in this petition is VACATED.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court


6