Singh-Kar v. Bondi

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024
No. 22-6309

RAJANBIR SINGH-KAR,
*Petitioner*,

*v.*

PAMELA BONDI,
UNITED STATES ATTORNEY GENERAL,
*Respondent*.[*]

On Petition for Review of an Order of
the Board of Immigration Appeals.

SUBMITTED: JANUARY 31, 2025
DECIDED: MAY 21, 2025

Before: CARNEY, PARK, and NARDINI, *Circuit Judges*.

[*] The Clerk of Court is respectfully directed to amend the case caption as indicated above.

Petitioner Rajanbir Singh-Kar, a citizen of India unlawfully present in the United States, has applied for asylum, withholding of removal, and relief under the Convention Against Torture. In support of his application, Singh-Kar testified that members of a rival political party attacked him twice and that when he tried to report his attackers to the police, a police officer slapped him, threatened to jail him, and threw him out of the police station. An immigration judge denied Singh-Kar's application, the Board of Immigration Appeals affirmed, and Singh-Kar petitioned this Court for review. We conclude (1) that Singh-Kar's testimony regarding a single incident of police misconduct is insufficient to show that the Indian government is unable or unwilling to protect him, and (2) that general country conditions evidence in the record does not compel a different result. Substantial evidence therefore supports the agency's conclusion that Singh-Kar is not entitled to asylum or withholding of removal. Moreover, because Singh-Kar failed to preserve his challenge to the immigration judge's denial of his claim for relief under the Convention Against Torture, that claim is not properly before us. Accordingly, Singh-Kar's petition is DENIED.

---

Jaspreet Singh, Law Office of Jaspreet Singh, Richmond Hill, NY, *for Petitioner*.

Robert Michael Stalzer, Trial Attorney, Office of Immigration Litigation, Brian M. Boynton, Principal Deputy Assistant Attorney General, Anna Juarez, Senior Litigation Counsel, Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner Rajanbir Singh-Kar, a citizen of India, has applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), claiming that members of the Akali Dal Badal Party (the "Badal Party") attacked him twice due to his work for the rival Shiromani Akali Dal Amritsar party (the "Mann Party"). Singh-Kar asserts that, when he attempted to report his attackers to the police, a police officer slapped him, threatened to jail him, and threw him out of the police station. After receiving testimony from Singh-Kar, an immigration judge (the "IJ") denied his application. As pertinent here, the IJ rejected Singh-Kar's requests for asylum and withholding of removal, finding that he had failed to establish that the government of India is unable or unwilling to protect him from persecution at the hands of private persons. The Board of Immigration Appeals ("BIA") agreed and dismissed Singh-Kar's appeal of the IJ's decision. Singh-Kar now petitions this Court for review. We conclude that substantial evidence supports the BIA's denial of Singh-Kar's requests for asylum and withholding of removal, that Singh-Kar failed to preserve his CAT claim, and that he failed to demonstrate ineffective assistance by his attorney during proceedings before the IJ. We therefore DENY Singh-Kar's petition.

## I.    Background

Singh-Kar unlawfully entered the United States in January 2016. The Department of Homeland Security subsequently took him into custody and initiated removal proceedings. Singh-Kar conceded

his removability and filed an application for asylum under section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158, withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and withholding of removal under CAT, 1465 U.N.T.S. 85 (1984). The application stated that Singh-Kar's father is a member of the Mann Party, and that Singh-Kar supports the party's goal of establishing a separate Sikh state, known as "Khalistan." Singh-Kar's application further asserted that he was "physically harmed" by members of the Badal Party due to his father's political activities, and that he was "detained and mistreated by the Indian police" when he tried to report his attackers. Certified Admin. R. ("CAR") 159–60. Singh-Kar claimed that, if he returns to India, he is likely to be harmed due to his political opinions.

On April 29, 2019, the IJ held a merits hearing regarding Singh-Kar's requests for relief. During the hearing, Singh-Kar testified as to the following sequence of events.

On January 26, 2015, Singh-Kar was riding his bike home from school when two people approached him and told him to stop working for the Mann Party. When Singh-Kar refused to do so and voiced support for the establishment of Khalistan, the people hit him in the legs with a hockey stick, threw him to the ground, and told him that they would kill him and his family if he did not join the Badal Party. Later that afternoon, Singh-Kar and his father went to the police station to report the incident. They waited more than two hours, but no one would listen to them. Singh-Kar eventually tried to speak to a police officer, but the officer directed a constable to tell

4

Singh-Kar to leave, slapped him in the face twice, and threw him out of the police station. When Singh-Kar's father asked the officer why he had slapped Singh-Kar, the officer responded that it was because Singh-Kar's family was "Khalistani people." The officer stated that Singh-Kar and his father would be jailed if they did not leave the police station.

On June 30, 2015, when Singh-Kar was returning home from a Sikh temple, three people approached him and discussed how he had not stopped working for the Mann Party. The people then identified themselves as members of the Badal Party and said that they should kill Singh-Kar to teach his family a lesson for not listening to them. They began beating Singh-Kar, but he was able to run away and hide.

After receiving Singh-Kar's testimony, the IJ issued an oral decision denying his application. The IJ first rejected Singh-Kar's requests for asylum and withholding of removal, finding that a single incident of police misconduct was insufficient to establish that the Indian government was unable or unwilling to protect him. In doing so, the IJ noted that Singh-Kar's application, which stated that the police had detained him, was inconsistent with his testimony, which made no mention of any such detention. The IJ also denied Singh-Kar's CAT claim, finding that he had not established a likelihood that he would be tortured "at the hands of, with the acquiescence of, or with the government of India turning a blind eye to his torture." *Id.* at 64.

Singh-Kar appealed the IJ's decision to the BIA. On June 2, 2022, the BIA dismissed the appeal, concluding that the IJ did not clearly err in finding that Singh-Kar's testimony regarding the incident at the police station was insufficient to demonstrate that the Indian government was unable or unwilling to protect him. The BIA rejected Singh-Kar's argument that general country conditions evidence in the record compelled a different result. The BIA also rejected Singh-Kar's attempt to proffer an additional country conditions report for the first time on appeal, noting that Singh-Kar had not shown that the report, which was published in 2015, was previously unavailable. Finally, the BIA concluded that, because he had not meaningfully challenged the IJ's denial of his CAT claim, Singh-Kar had waived that issue.

In the brief he submitted to the BIA, Singh-Kar made the additional argument that he had received ineffective assistance of counsel in the proceedings before the IJ because his previous attorney failed to submit certain country conditions evidence and a detailed statement regarding his claims. The BIA rejected this claim, concluding that Singh-Kar had not shown that he was prejudiced by his prior counsel's performance. The BIA reasoned that Singh-Kar had neither identified specific facts that were missing from his testimony nor shown that additional country conditions evidence would have changed the IJ's resolution of his claims.

On June 23, 2022, Singh-Kar timely filed a petition seeking our review of the BIA's decision. In his briefing in support of his petition, Singh-Kar challenges the agency's findings that he failed to establish

6

past persecution or a well-founded fear of future persecution, that he was not prejudiced by the acts of his previous counsel, and that he had not established a likelihood that he will be tortured if he returns to India.

## II.   Discussion

Our jurisdiction to review the BIA's decision arises under 8 U.S.C. § 1252(a)(1), which authorizes judicial review of final orders of removal.  When, as here, "the decision of the BIA is consistent with the decision of the IJ, we may consider both decisions for the sake of completeness."  *Singh v. Garland*, 11 F.4th 106, 112 (2d Cir. 2021) (internal quotation marks omitted).  In doing so, "[w]e review factual findings for substantial evidence and questions of law and the application of law to fact *de novo*."  *Castellanos-Ventura v. Garland*, 118 F.4th 250, 253 (2d Cir. 2024).  Because "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), we "must defer to the factfinder's findings based on such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Singh*, 11 F.4th at 113 (internal quotation marks omitted). "The scope of review under the substantial evidence standard is exceedingly narrow, and we will uphold the BIA's decision unless the petitioner demonstrates that the record evidence was so compelling that no reasonable factfinder could fail to find him eligible for relief." *Id.* (internal quotation marks omitted).

## A. Asylum and Withholding of Removal

Singh-Kar's requests for asylum and withholding of removal both fail for the same reason: He has failed to establish past persecution or a well-founded fear of future persecution that is directly or indirectly attributable to the Indian government. Accordingly, substantial evidence supports the BIA's decision that Singh-Kar is not entitled to either form of relief.

An applicant for asylum or withholding of removal "must establish that he was persecuted or has a 'well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015) (quoting 8 U.S.C. § 1101(a)(42)). "To qualify as persecution the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is unable or unwilling to control." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (internal quotation marks omitted). We have described this standard as requiring an applicant seeking "to demonstrate persecution based on private party violence" to "show either that the government condoned the action or, even if it did not, that it was completely helpless to protect the victims." *Id.* at 332; *see Castellanos-Ventura*, 118 F.4th at 254; *Singh*, 11 F.4th at 114–15. "[A] close relationship between government officials and private persons may be probative of the formers' unwillingness or inability to control the latter, but the relationship alone does not transform the private persons into government actors." *Scarlett*, 957 F.3d at 331.

8

At the outset, Singh-Kar has failed to establish past persecution or a well-founded fear of future persecution that is *directly* attributable to the Indian government.  Although he concedes that his attackers were not government officials, Singh-Kar argues both that they were "at a minimum, affiliated with the government" and that they were "clearly acting on behalf of their party government (agents)."  Pet. Br. at 11–13.  But "[a]n applicant's allegation that he was persecuted by members of a political party—even one that is in power nationally or . . . is aligned with a party in power nationally— does not establish that the applicant was persecuted by the government."  *Singh*, 11 F.4th at 115 (footnote omitted).  Rather, because "[m]embers of a political party are not the government[,] for mistreatment inflicted by party members to amount to persecution, an applicant must show that the government was unwilling or unable to control the attackers."  *Id.*  So, despite the purported party affiliation and political motivations of Singh-Kar's attackers, their conduct is not directly attributable to the Indian government.[1]

Because Singh-Kar provides no basis to conclude that government actors have persecuted him or will persecute him, he must establish that the Indian government is unable or unwilling to protect him from the persecution of private persons.  In attempting to

---

[1] Singh-Kar does not assert that the incident at the police station, standing alone, constituted persecution; nor would such an argument succeed given the relatively mild nature of the incident, *see Jian Qiu Liu v. Holder*, 632 F.3d 820, 822 (2d Cir. 2011) (concluding that the petitioner failed to establish past persecution when he had "suffered only minor bruising from an altercation with family planning officials, which required no formal medical attention and had no lasting physical effect"); *Kambolli v. Gonzales*, 449 F.3d 454, 456–57 (2d Cir. 2006) (concluding that the petitioner had not established past persecution even though he was "threatened by four policemen who came to his house").

9

meet this burden, Singh-Kar points to the incident at the police station and general country conditions evidence regarding human rights issues in India. This evidence is insufficient to show that the persecution Singh-Kar fears is indirectly attributable to the Indian government.

First, both the IJ and the BIA considered Singh-Kar's testimony regarding the incident at the police station and appropriately concluded that it was insufficient to meet Singh-Kar's burden. CAR 3–4, 63–64. Testimony that the police failed to assist a petitioner on one occasion, without more, does not establish an entire government's inability or unwillingness to protect him. *See Singh*, 11 F.4th at 115–16 (concluding that the petitioner had failed to show that the Indian government was unable or unwilling to protect him, despite his testimony that "the police failed to assist him in connection with his report of a telephone threat").[2] Singh-Kar's assertion that a police officer slapped and threatened to jail him—a single instance of relatively mild mistreatment by one officer—does not change this result. *See Kambolli*, 449 F.3d at 456–57 (concluding that the petitioner had not established a well-founded fear of persecution even though he was threatened by four policemen who came to his house and "told him to abandon his quest for office or leave Albania" or else "the police would 'damage' him or his family").

---

[2] *See also Singh v. McHenry*, No. 22-6289, 2025 WL 302797, at *2 (2d Cir. Jan. 27, 2025) (summary order) ("The agency reasonably determined that Singh's one failed attempt to file a police report was insufficient—in light of country conditions evidence—for [the petitioner] to demonstrate that the Indian government was unwilling or unable to protect him.").

Accordingly, Singh-Kar's evidence of this single incident of police misconduct falls far short of establishing that the Indian government, as a whole, is unable or unwilling to protect him from persecution by private persons.

The general country conditions evidence Singh-Kar submitted was likewise insufficient to meet his burden of proof. Singh-Kar relies heavily on reports of the U.S. Department of State and the Refugee Board of Canada. *See* CAR 51–57, 184–247. But "[g]eneral country-conditions evidence does not on its own compel the conclusion that an individual will be persecuted . . . ." *Singh*, 11 F.4th at 116–17. And, in any event, the evidence Singh-Kar submitted does not definitively establish that Sikhs or Mann Party members face widespread persecution in India. *See* CAR 51–52 (noting that, according to one source, "there is no evidence of widespread or systematic mistreatment of Sikhs in Punjab during the 2013–2015 period"). Thus, Singh-Kar's country conditions evidence does not mandate a finding by a reasonable adjudicator that the Indian government is unable or unwilling to protect him.[3]

Finally, we reject Singh-Kar's contention that the IJ failed to create a record regarding his requests for asylum and withholding of

---

[3] In arguing separately that he has a well-founded fear of future persecution, Singh-Kar relies on a letter from S. Harvinder Singh, an office secretary in the Mann Party, discussing the possibility that Singh-Kar will be persecuted upon his return to India. "We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence," *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013), including its decision to accord "little weight" to letters from interested parties who are unavailable for cross-examination, *Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020). Accordingly, we decline to disturb the agency's decision based on this letter.

removal. Singh-Kar claims that the IJ erred by finding that a single incident of police misconduct was insufficient to meet his burden of proof without asking him why he did not seek help from the police after Badal Party members attacked him a second time. But, in making this argument, Singh-Kar does not identify any facts he would have added in response to such questioning; nor does he explain how those facts would have led the agency to a different conclusion regarding his application. Accordingly, his assertion that the agency erred by deciding his case on an incomplete record is unpersuasive.

### B. Convention Against Torture

Because Singh-Kar failed to exhaust his administrative remedies with respect to his CAT claim, that claim is not properly before us. "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). As pertinent here, a petitioner must "raise *issues* to the BIA in order to preserve them for judicial review." *Quituizaca v. Garland*, 52 F.4th 103, 116 (2d Cir. 2022) (internal quotation marks omitted). Although Singh-Kar now argues that the IJ failed to properly analyze his CAT claim, he did not raise that argument in his appeal to the BIA. Indeed, in his briefing in support of his petition, Singh-Kar does not contest the BIA's finding that he did not "meaningfully challenge" the IJ's denial of his CAT claim. CAR 5. Given Singh-Kar's failure to preserve this issue, we consider it no further.

## C.  Ineffective Assistance of Counsel

Finally, we reject Singh-Kar's assertion that remand is appropriate because he received ineffective assistance of counsel in his proceedings before the IJ.

"To demonstrate ineffective assistance of counsel, [a petitioner] must show that counsel's performance 'fell below an objective standard of reasonableness' and that he was prejudiced as a result of such deficient performance." *Paucar v. Garland*, 84 F.4th 71, 80 (2d Cir. 2023) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "To establish prejudice in this context, [the petitioner] must show that, but for counsel's unprofessional errors, there is a reasonable probability the [agency] would have granted the relief [he] requested." *Id.* (internal quotation marks omitted). "Such a probability is demonstrated where a movant makes a *prima facie* showing that, but for counsel's ineffectiveness, he would have been eligible for relief, and could have made a strong showing in support of his application." *Id.* at 80–81 (ellipsis and internal quotation marks omitted).

As the BIA correctly concluded, Singh-Kar has failed to show that he was prejudiced by his previous counsel's performance. In support of his ineffective assistance claim, Singh-Kar argues that his attorney failed to submit "articles or reports," including a report from the Refugee Board of Canada. Pet. Br. at 24–25. But, as discussed, such general country conditions evidence is insufficient on its own to "compel the conclusion that an individual will be persecuted." *Singh*,

13

11 F.4th at 116–17. And even in conjunction with the rest of the evidence in the record, including his own testimony, we cannot conclude that these additional documents would have changed the result of the proceeding. In short, Singh-Kar has not demonstrated a reasonable probability that, but for his counsel's purported failure to submit this evidence, the agency would have granted his requests for relief.

## III. Conclusion

This case presents a fact pattern that our Court has repeatedly considered.[4] In attempting to establish that India's government is

---

[4] See, for example, the following summary orders: *Singh v. McHenry*, No. 22-6289, 2025 WL 302797, at *1 (2d Cir. Jan. 27, 2025) ("Singh testified that he was a member of and a worker for the [Mann Party], and that he was attacked twice by members of the [Badal Party]. First, in 2013, while Singh was door-to-door fundraising for the Mann Party, four men stole the proceeds he had collected, beat him with iron rods, and tied him to a tree. Second, in 2014, on his way home from temple, three men brandished a gun and threatened his life in an attempt to recruit him to the Badal Party. The day after the first attack, Singh tried to file a police report, but an officer 'pushed him out' and refused to assist because the Badal party was 'their government.'" (alteration adopted)); *Singh v. Garland*, No. 22-6457, 2024 WL 1478576, at *2 (2d Cir. Apr. 5, 2024) ("In the application, Singh wrote that three people on a bike came up to [him] and attacked [him] with hockey sticks and rods." (alteration adopted) (internal quotation marks omitted)); *Singh v. Garland*, No. 21-6651, 2024 WL 1193063, at *1 (2d Cir. Mar. 20, 2024) (describing how the applicant wrote "that members of opposing parties threatened him to discourage him from supporting the [Mann Party] and then attacked him twice," including once with hockey sticks, and that "he went to the police with his grandfather and a friend to lodge a complaint"); *Singh v. Bondi*, No. 22-6576, 2025 WL 863103, at *1–2 (2d Cir. Mar. 19, 2025) (similar); *Singh v. Garland*, No. 22-6084, 2024 WL 4356334, at *2 (2d Cir. Oct. 1, 2024) (similar); *Singh-Bassi v. Garland*, 857 F. App'x 25, 26–27 (2d Cir. 2021) (similar); *Singh v. Barr*, 795 F. App'x 41, 43 (2d Cir. 2019) (similar).

14

unable or unwilling to protect him from private persecution, Singh-Kar relies on general country conditions evidence and a single, minor incident of police misconduct. We hold that the agency acted well within its discretion in finding that this evidence was insufficient to establish Singh-Kar's entitlement to asylum or withholding of removal. We further hold that Singh-Kar failed to preserve his challenge to the IJ's denial of his CAT claim, and that he failed to demonstrate ineffective assistance by his attorney during proceedings before the IJ. We therefore DENY Singh-Kar's petition.